JAMES C. HUME, Appellant, v. INDEPENDENT SCHOOL DISTRICT OF DES MOINES, Appellee.

**SCHOOLS AND SCHOOL DISTRICTS:** Government, Etc.—Unlawful Demand for Tuition—Remedy.  Relief from an unlawful demand for tuition, based on an erroneous finding by the school board that the pupil is a nonresident, must be reached by an appeal to the county superintendent, etc.  If said demand is accompanied by an order for the expulsion of the pupil if the tuition be not paid, injunction will lie, especially where a money demand exists for the return of tuition paid under protest.  (Sec. 2818, Code, 1897.)

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

MONDAY, SEPTEMBER 24, 1917.

ACTION in equity to enjoin defendant from expelling Thomas D. Hatton, a nephew of plaintiff's, from the West Des Moines High School because of the nonpayment by plaintiff or anyone for said minor of tuition for schooling and instruction, and to recover $50.75 already paid by appellant to defendant school board on account of tuition for said boy, which payment is alleged to have been made under protest and because of coercion and duress by defendant.  There was a demurrer to the petition, which was sustained, and, plaintiff refusing to plead further, judgment was rendered against him, and he appeals.  *Reversed.*

*Cummins, Hume & Bradshaw,* for appellant.

*Charles Hutchinson, Robert J. Bannister,* and *Roy E. Cubbage,* for appellee.

SCHOOLS AND SCHOOL DISTRICTS: government, etc.: unlawful demand for tuition: remedy.

PRESTON, J.—So much of the petition filed March 25, 1915, as appears to be necessary to a determination of the case is substantially this: Plaintiff is, and for more than 30 years has been, a resident, citizen and heavy taxpayer of the city of Des Moines and the defendant school district; Thomas D. Hatton, a minor about 19 years of age, prior to August 29, 1914, lived with his parents in Humboldt County, Iowa, which is still the place of residence and domicile of his parents; at about the date last mentioned, said minor left Humboldt County, with the intention to remove permanently therefrom, and came to the city of Des Moines, intending to make Des Moines his permanent home, and with no present intention to return to Humboldt County to live, and he has no present intention to remove from Des Moines; the removal aforesaid to Des Moines was in pursuance of an arangement made about January, 1914, by and between said minor and his parents and the plaintiff, whereby said parents, the minor concurring therein, agreed to surrender to plaintiff the personal custody, control and society of said minor during the rest of his minority, and the plaintiff agreed to take said minor into his home as a member of his family, and, so long as said minor conducted himself in a proper and satisfactory manner, to support and educate him; since said August 20th, said minor has been an actual resident of Des Moines, living with plaintiff, and is entitled to attend the free public school known as the West Des Moines High School; the terms of the agreement have been and will be fully kept; said minor was admitted to said high school about August 26, 1914, and has continued in attendance there and intends to so continue until the end of the school year of 1915; about February 4, 1915, defendant, by its board of directors and secretary, demanded of plaintiff payment of tuition for said minor for the school year 1914–1915, at the rate of $7.25 per month,

under threat of expulsion of the minor unless payment was made, alleging as ground for said demand that the minor was a nonresident of the defendant school district, and that, under the laws of Iowa, he was liable for such tuition; about March 17, 1915, in compliance with a written demand of the secretary's, plaintiff paid to defendant, under pro- test, $50.75, the amount claimed to be due for tuition of said minor for 7 months, ending March 26, 1915; plaintiff paid a large amount of school taxes in 1914, and would pay a large amount for the year 1915; plaintiff had no child or ward in attendance at the public schools of defendant district other than said minor, nor had he been advantaged personally or otherwise, except as a citizen of Des Moines, by the payment of said taxes. It is further alleged that, on March 26, 1915, the defendant claimed that another month's tuition of $7.25 on account of said minor will be due, and a like amount on the 26th of each month there- after during the balance of the school year 1914–1915; that, unless said installments of tuition are paid, defendant is threatening to, and unless restrained will, expel said minor from said high school and deprive him of his right to attend and receive instruction, to the irreparable injury of said minor and of the plaintiff, and that the action of de- fendant in coercing plaintiff to pay the said sum of $50.75, and the acts of defendant in all the particulars mentioned, are illegal and an illegal exercise of power of defendant; that for plaintiff to yield to the demands aforesaid for the months commencing March 26th or suffer the expulsion of said minor will necessitate a multitude of suits at law to recover from defendant the amounts paid to it by plaintiff; that plaintiff has no plain, speedy or adequate remedy, save in a court of equity.

The demurrer to the petition was as follows:

"The defendant demurs to plaintiff's petition on the

ground that the facts therein stated do not entitle the plaintiff to the relief demanded, nor to any relief whatever; and on the further ground that it appears from said petition that this court has no jurisdiction to issue an injunction herein, but that the plaintiff's remedy, if any, is by appeal from the action of the board of directors of the defendant, and that plaintiff has no right to maintain this action."

The points involved are, therefore, whether plaintiff's remedy was by appeal from the action of the board of directors to the county superintendent and the state superintendent, and whether plaintiff was entitled to the relief demanded, because he had a plain, speedy and adequate remedy by such appeal.

A number of other questions are argued and claimed by appellant to be involved in the points just mentioned. These different points are elaborately and ably argued by counsel in their briefs of more than one hundred pages. Appellant's principal contentions, stated as briefly as may be, are: That Thomas D. Hatton is, within the meaning and intent of Section 2773 of the Code of Iowa, an "actual resident" of the defendant district, and as such, being a minor within the statutory school age, is entitled to free ₋chooling in the schools of said district; that, even should the "actual residents" to whom said section grants free ·schooling be held to include only those who have acquired a technical legal domicile within the school district, nevertheless, having been surrendered by his parents to the plaintiff as stated, and having taken up his residence in the school district permanently, said minor acquired a domicile in Des Moines and is entitled to the freedom of its schools; that, even should said Thomas be held to be a nonresident of defendant district within the meaning of the statute referred to, the plaintiff, having assumed the position of parent or guardian of said minor, and become liable for his support and education, is, under Section 2804 of the Code, entitled to

deduct the amount of school taxes paid by him in defendant district from the amount of tuition required to be paid on account of said minor; that these taxes exceed the amount of tuition claimed; that this suit, being one to prevent a threatened irreparable wrong for which there is no speedy, adequate and complete remedy at law, is maintainable in equity, notwithstanding the provisions of Section 2818 of the Code, authorizing appeals from decisions of boards of directors to the county superintendent, etc; that, as incidental to the equitable relief, plaintiff is entitled to recover the tuition money wrongfully extorted, even though an injunction be not granted; and that, though the statute authorizing an appeal be held to take away plaintiff's remedy by injunction, still, under the allegations of his petition, he was entitled to some relief to recover the money alleged to have been wrongfully extorted; that, plaintiff having assumed the position of one standing *in loco parentis* to said minor, and the obligation incident thereto, it was plaintiff's right and duty to bring this action.

Appellant's propositions are disputed by appellee, which contends that the question of the residence of said minor and his liability, or that of plaintiff, for the payment of tuition, and like questions raised by the petition, were questions for the determination of the board of directors, and that, the board having passed upon and determined them, plaintiff's remedy was by appeal to the higher school authorities, if he claimed that the decision of the board was erroneous. The appellee also contends that there are large numbers of grandparents and other relatives and friends living in Des Moines who have young relatives residing in other parts of the state whom they would be glad to bring into their homes for the purpose of securing to such children the advantages of the finely equipped facilities provided by defendant district; that a determination against defendant in this case would deprive defendant school board of the

right to exact tuition from nonresident children attending its schools, and would cause an influx of persons of high school age whose parents are unable, on account of pecuniary circumstances or a geographical location, to furnish high school facilities to them, and thus burden the taxpayers of defendant district and require the building of other school buildings and the furnishing of additional school facilities, when the schools are already overcrowded.

As suggested, the arguments have taken a wide range, and some of them may be beyond the issues. Appellee strenuously insists, and cites numerous authorities to the point, that plaintiff may not maintain this action in equity, because, under the statute, he has a plain, speedy and adequate remedy by appeal to the county superintendent and the superintendent of public instruction; and we shall take up that question first.

1. It is appellant's contention that, had the defendant board expelled this minor, it would have cost him standing in his class and interrupted his education, and that the threatened injury would have been irreparable; that, therefore, there was no adequate and complete remedy save by an injunction in a court of equity. Cases from other jurisdictions under the statutes thereof are cited to sustain this proposition. It is also contended that public officers, including school directors, may be enjoined from the perpetration of irreparable injury by illegal acts, and that the wrongful exclusion of a pupil is such an injury,—again citing the same cases: *Mizner v. School District,* (Neb.) 96 N. W. 128 and 1006; *Cross v. Board of Trustees,* (Ky.) 89 S. W. 506. Counsel quote from the *Mizner* case as follows:

"It is urged that injunction will not lie; that, conceding the right of Ivy Bellinger to attend the school, and the denial of that right by the defendants, the proper action is mandamus, and that equity will not interfere to

afford relief. No one will attempt to deny the rule that, where an adequate remedy at law exists, equity will not interfere; but did the plaintiff have an adequate remedy at law in this case? Was there any legal remedy which offered the full, adequate and speedy relief to which plaintiff was entitled? Ivy was past sixteen. Her school days were nearly over. She was entitled to, and the plaintiff had the legal right to demand that she should, attend this school from day to day. * * * The only speedy and adequate relief offered to the plaintiff was a resort to the extraordinary remedy of an injunction. Under the circumstances, we think that he was entitled to appeal to the equity side of the court for this remedy. As before stated, no court of law could adequately measure the damage which he or Ivy might sustain by being expelled from the school, or by being denied an education."

In the *Mizner* case, it was a question whether the remedy for a pupil wrongfully expelled, or threatened with expulsion, was injunction or mandamus, and whether a court of law could adequately measure the damage which might be sustained by being expelled from the school. There appears to have been no question raised in that case as to whether the party had an adequate remedy by appeal to the county superintendent or to the superintendent of public instruction, and the rule was recognized in that case that, if there is an adequate remedy at law, equity will not interfere. Of course the rule is well settled and is elementary in regard to the law governing injunctions, that an injunction will not be granted if the complaining party has a plain, speedy and adequate remedy at law.

We have held in the *Preston* case, hereafter cited, that, under our statute, mandamus will not lie in cases of this character, but that appeal to the county superintendent is the proper remedy.

In the *Cross* case, supra, a mandatory injunction was

issued, compelling the defendant to reinstate a boy who had been wrongfully expelled from school. In that case, counsel for defendant admitted that it was the general rule that, where a child was unlawfully expelled from school, mandatory injunction was proper.

Appellant contends further that appeal to the county superintendent and the state superintendent is neither speedy, complete nor adequate. Appellant concedes that decisions and orders of the board of directors relating to school affairs cannot be controlled by the courts, and that the remedy afforded by appeal to the county and state superintendents is exclusive, and says that this rule applies where school boards have been granted discretionary powers. Cases are cited also to the point that, where positive official duty is enjoined upon a board of school directors, mandamus will lie to compel action, and that an injunction will lie in certain cases where the action of the board is unauthorized, illegal, or beyond the powers of the board.

Appellant quotes at some length from the opinion in the case of *Perkins v. Board of Directors,* 56 Iowa 476, 478, that, in one class of cases, appeals to the county superintendent are not the exclusive remedy for reviewing or assailing the decisions and orders of school directors; that this class includes cases wherein the jurisdiction and powers of the directors are brought into question, and wherein questions arise involving the construction of statutes conferring power upon school officers. There were two dissenting opinions in that case, and the case was explained in *State v. Thomas,* 152 Iowa 500, 503, where the *Perkins* case and other cases are referred to. In the *Thomas* case, it was further said that appeals may be taken in cases involving questions of fact before the board, and where the determination of such questions involves judgment and discretion.

Again, it is said by appellant, citing *Clark v. Board of*

*Directors,* 24 Iowa 266, and other like cases, that school directors have no discretionary power to exclude colored pupils. Counsel paraphrase some of the language in that case in this wise:

"Under our Constitution, which declares that provision shall be made 'for the education of all the youths of the state through a system of common schools,' which constitutional declaration has been effectuated by the enactment of Code Section 2773, providing that 'every school shall be free of tuition to all actual residents between the ages of 5 and 21 years,' is it not equally clear that all discretion is denied to the board of directors to exclude any such youths?"

The writer is of the opinion that the trouble with appellant's contention here is that it is not so much a question of discretion as it is a question of fact whether such youths are or are not actual residents of a school district. It is also urged by appellant, as a reason for saying that the remedy by appeal to the county superintendent is not adequate, that no stay of proceedings pending the appeal is authorized, and no way provided to maintain the *status quo.* It is doubtless true, as I think, that, if an appeal is taken from a decision of the board of directors to the county superintendent, the board will not execute its order, or possibly in such a case an injunction may lie until the appeal is determined; but there is no occasion to pass upon that question now, because no appeal was taken. We do not understand appellee to dispute these legal propositions of appellant's, but it contends that they are not applicable to the state of facts presented in the instant case.

Section 2804 of the Code vests in the board of directors the duty of determining the residence or nonresidence of a school child, and of fixing the terms upon which he may attend school in a district other than his residence. Plaintiff's petition shows that the defendant board has consid-

ered the residence of Thomas D. Hatton and found that he is a nonresident, and fixed the terms upon which he may attend the schools of the city of Des Moines. Section 2818 provides that any person aggrieved by any decision or order of the board of directors of any school corporation in a matter of law or fact may appeal therefrom to the county superintendent, etc. Section 2820 provides for appeal to the state superintendent, and reads, in part, that "the decision when made shall be final," and further that:

"Nothing in this chapter shall be so construed as to authorize either the county or state superintendent to render judgment for money;" etc.

Appellant's claim as to this last clause will be referred to later in the opinion.

No fraud is alleged in the petition, and it is quite clear, as I think, that the board of directors had jurisdiction to determine the fact question as to the residence of the minor, Hatton. Appellant's contention is that the board determined that question erroneously. Conceding that the petition alleges the conclusion, to some extent, at least, that Hatton was a resident of Des Moines, still the facts are stated, and, as said in *Preston v. Board of Education,* 124 Iowa 355, at 357:

"We have as the situation an erroneous conclusion of the board on a question of fact, which question the law had explicitly entrusted to its determination. The board, however, was acting within its jurisdiction, and the error of judgment, as we have seen, can be corrected by appeal."

Appellee further cites on this proposition *James v. Gettinger,* 123 Iowa 199; *Clark v. Board of Directors,* 24 Iowa 266; *Bogaard v. Independent District,* 93 Iowa 269; *Doubet v. Board of Directors,* 135 Iowa 95; *Kinzer v. Directors,* 129 Iowa 441. See also *Sweitzer v. Fisher,* 172 Iowa 266; *School Corporation v. Independent School District,* 162 Iowa 257; *Smith v. Blairsburg Ind. School Dist.,*

179 Iowa 500. The case last cited was a certiorari case, wherein it was held that certiorari would not lie, because there was a plain, speedy and adequate remedy by appeal to the county superintendent. The case just referred to in 162 Iowa 257 was an injunction case, holding to the same effect. The *Preston* case, in 124 Iowa, was a mandamus case, wherein it was held that the action of a school board in denying a pupil free admission to the schools on the ground of nonresidence cannot be reviewed in a mandamus proceeding, because the remedy is by appeal. As having some bearing, see *Ellyson v. City of Des Moines,* 179 Iowa 882, and cases therein cited, holding that in paving cases appeal is the exclusive remedy. The writer is of opinion that these cases rule the instant case, and that it is settled by the decisions of this court that such controversies as are here involved are for the determination of the board of directors, and that the remedy is by appeal to the county superintendent, and, if his decision is adverse, then to the state superintendent of public instruction,—at least that this is so in the first instance, and until the remedies provided by appeal have been exhausted, and in the absence of fraud. We deem it unnecessary to review the cases further. But a majority of the court think otherwise, and hold that the injury to plaintiff would be irreparable, and that, because of the greater flexibility of the injunctive remedy, all questions can be fully determined and adjusted, and further, that the case presented is not one strictly involving school matters alone, because it involves the payment of money, in which the board of directors are interested, and therefore are, in a sense, acting as judges in their own case. On these different propositions, the majority rely, to some extent at least, on the opinion of the state superintendent, as quoted and approved in *Wallace v. Independent School District,* 150 Iowa 711, 714, where it was held that, under the facts of that case, injunction was the exclusive remedy.

Reliance is also placed on the following cases, cited by appellant: *Mizner v. School District,* (Neb.) 96 N. W. 128, 129, and 1006, and *Cross v. Board of Trustees,* (Ky.) 89 S. W. 506, to the point, as contended for by appellant, that public officers, including school directors, may be enjoined from the perpetration of irreparable injury by illegal acts, and that the wrongful expulsion of a pupil is such an injury. And to the point that appeal is not an adequate remedy, and that the courts are not excluded from preventing or rectifying acts of school officers which are beyond the scope of their powers, or are an unreasonable exercise of the discretionary powers, they cite *Kinzer v. Directors,* 129 Iowa 441, 443; *Perkins v. Board of Directors,* 56 Iowa 476, 479, and cases cited; *Hinkle v. Saddler,* 97 Iowa 526, 536.

It is the conclusion of the majority that injunction will lie in this case, and that the trial court erred in not so holding.

Counsel for appellant in argument seem to concede that the case of *Preston v. Board,* 124 Iowa 355, is contrary to the decision in the *Perkins* case, and cases therein cited. In the *Perkins* case, it was said:

"It is very plain that, in one class of cases, appeals are not the exclusive remedy for reviewing or assailing the decision and orders of the school directors. This class includes all cases wherein the jurisdiction and power of the directors are brought in question, and wherein questions arise involving the construction of statutes conferring power upon school officers. The courts of the state are arbiters of all questions involving the construction of the statutes conferring authority upon officers and jurisdiction upon special tribunals. It was certainly never the intention of the legislature to confer upon school boards, superintendents of schools or other officers discharging quasi judicial functions, exclusive authority to decide questions pertain-

ing to their jurisdiction and the extent of their power. All such questions may be determined by the courts of the state. Hence, when the rights of a citizen are involved in the exercise of authority by a school officer, the courts may determine whether such authority was lawfully exercised."

2. As before stated, it is contended by appellant that, even though he is not entitled to an injunction, still he is entitled to some relief,—that is, to recover the money alleged to have been paid by plaintiff under compulsion; that the demurrer should not have been sustained and the petition dismissed. The argument is substantially this: That, since Section 2820 of the Code provides that "nothing in this chapter shall be so construed as to authorize either the county or state superintendent · to render judgment for money," the board could not render a judgment for the $50.75 already paid by appellant; and that, in proper cases, suits for money judgments are maintainable against school districts, as, for instance, that a teacher may sue for a breach of his contract with the school district, citing *Burkhead v. Independent School District,* 107 Iowa 29, and *Curttright v. Independent School Dist.,* 111 Iowa 20.

Appellant also argues that, where it appears that plaintiff's remedy at law would necessitate the bringing of a number of successive actions, and thus result in a multiplicity of suits, relief will be granted in equity, and quote from some of the cases that:

"Where acts may cause irreparable injury, where a multiplicity of suits will be avoided, or where acts of trespass are constantly repeated, but the injury resulting from each act is trifling, relief in equity will be granted, because of the inadequacy of the legal remedy." *Dumont v. Peet,* 152 Iowa 524, 528.

Counsel for appellant say, however, that they do not contend that always, or perhaps in the instant case, the prevention of a multiplicity of suits is, in and of itself, a

sufficient ground for equitable jurisdiction, under the doctrine announced in *Richmond v. Dubuque & S. C. R. Co.,* 33 Iowa 422, 487, 488. They do contend that, as equity had jurisdiction of the cause upon the grounds of impending irreparable injury and inadequacy of relief at law, the prevention of a multiplicity of suits at law enhanced the plaintiff's equities, and is a sufficient ground upon which to base plaintiff's prayer for a money judgment. They also quote from *Novak v. Novak,* 137 Iowa 519, 524, to this effect:

"The doctrine is too well settled to admit of either discussion or dispute that, when a court of equity once acquires jurisdiction of a cause, it will not relax its grasp upon the *res* until it shall have avoided a multiplicity of suits by doing full, adequate and complete justice between the parties."

The *Novak* case is the only one cited on that point. There, one defendant had filed a cross-petition, which was dismissed by the trial court, after a trial, because it was not germane to the cause of action stated in the original petition. And the court said that, had cross-petitioner cared to raise the point that the cause of action stated in the cross-petition would not affect that contained in the original petition, he should have raised the question by motion to strike or to dismiss, and that, having pleaded to the merits, he was not in a situation to question the procedure by which he was brought into, or submitted himself or the subject matter to, the court's jurisdiction, because it was competent for the parties by mutual consent to submit the issues joined to the court for its determination; and that, by his conduct, he consented to a trial in that manner, and that such was the effect of his conduct. So that the point now suggested was really not in the *Novak* case.

Upon a somewhat limited independent investigation, it seems that there is a conflict in the cases as to whether,

where an action is brought in equity and the equitable issues are not proved or sustained, the court may proceed as in equity to try questions which are of a legal character. The question is an important one, and, since its determination is not necessary, because the case may be determined upon other grounds, we do not feel justified in passing upon the question without full argument. We shall content ourselves with the citation of some of the cases, with perhaps a few brief observations on that point. See *Fisher v. Trumbauer,* 160 Iowa 255, and cases cited at page 261; *Howard v. National French Draught Horse Association,* 169 Iowa 719, 728; 16 Cyc. 111–114; *Johnston v. Bunn,* (Va.) 19 L. R. A. (N. S.) 1064, and note; and, as having some bearing, the discussion in *Eller v. Newell,* 159 Iowa 711. The *Fisher* case itself does not bear directly, perhaps, because there the action was brought in equity and a cross-petition was filed for the recovery of damages at law, and the question was as to the transfer of the cause from one docket to the other; but in the supplemental opinion, it was held that plaintiff was entitled to a hearing in equity on the merits, and the defense of counterclaim was at law, and, such a defense having been interposed in a suit properly begun in equity, the legal defenses so interposed should also be heard there. This, we think, is a different proposition from that where the action is improperly brought in equity, or the equities alleged are not proved.

In the *Eller* case, the action was at law, in which a cross-petition asking for equitable relief was pleaded and the cause was transferred to the equity side of the calendar, which was held to be erroneous. The rules and apparent exceptions are stated in the reference to Cyc. just given. It might be suggested that if, in all cases, the court must proceed to hear questions at law in a suit brought in equity, a person having a claim which is really at law might,

for the purpose of avoiding a jury trial, bring his case in equity, setting up some equitable issue, knowing that he could not maintain it, unless possibly the defendant would be entitled to a jury trial, in a proper case, of a fact question, even though the action be brought in equity.

But, as before stated, we think the question here presented may be determined upon other grounds. It should be remembered that, as to the recovery of the $50.75, plaintiff claims that he paid the same under protest and by compulsion or duress, and the facts are stated. Appellee contends that such payment was voluntary, and cites *Anderson v. Cameron*, 122 Iowa 183, 184; and says that equity courts and jurisdiction are not maintained for the purpose of collecting moneys paid either voluntarily or under compulsion, citing *Kelly v. Andrews*, 94 Iowa 484. This money was paid under the same sort of an order of the board of directors as was made in reference to future payments, and plaintiff sought to enjoin defendant from compelling such future payments. I think the plaintiff had the same right to appeal to the county superintendent from the order requiring the payment of the installments he now seeks to recover. If the order of the board was erroneous, he could have had it corrected on appeal; at least I think we should not, for the purpose of permitting plaintiff to resort to the courts rather than take an appeal, assume that the county superintendent or the state superintendent would not decide the question correctly. In other words, plaintiff's remedy as to such payments was by appeal, as well as the future payments he sought to enjoin. If he had appealed and the controversy on appeal had been settled as he now contends it should have been, he would not have been compelled to pay at all. But it seems to be the rule that, where plaintiff proves or shows that he is entitled to the

equitable relief asked, equity will determine the entire controversy.

3.   Section 2804 of the Code provides, in part:

"The parent or guardian whose child or ward attends school in any independent district of which he is not a resident shall be allowed to deduct the amount of school tax paid by him in said district from the amount of the tuition required to be paid."

Appellant contends that the pronoun "he" in this statute stands for the nouns "child" or "ward," not for the nouns "parent" or "guardian," and that, when so construed, the words "parent or guardian" include the parent, and that, if the child or ward, Thomas Hatton, in attending the West Des Moines High School, be held to attend a school within a "district of which he (the child or ward) is not a resident," the appellant should be allowed to deduct the amount of school tax paid by him in said district. Appellee contends that the pronoun "he," as used in the statute, refers to the words "parent or guardian," and that plaintiff is neither, and that plaintiff is a resident of the same district in which Thomas D. Hatton is required to pay tuition, the contention at this point being that the person who is entitled to deduct the taxes paid is the parent or guardian whose child or ward is attending school in a district of which said parent or guardian is not a resident. Without determining the question, I am inclined to appellee's view at this point. It seems to me that it is a sufficient answer to this claim of appellant's to say that we do not find that plaintiff asked such relief in his petition, nor is it alleged therein that he asked the board of directors to make the deduction now argued; but, on the contrary, appellant was contending that no tuition was required for the minor. I see no reason why the board of directors, as well as the court, could not have made the deduction, had it been

proper; and, had it been asked and refused, then as to that question, plaintiff could have appealed to the county superintendent.

Other questions are argued, but those referred to are decisive of the case. It is the conclusion of the majority that the trial court erred in sustaining the demurrer to the petition. The judgment is therefore—*Reversed*.

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.