GENTRY *et al. v.* MEMPHIS FEDERATION OF MUSICIANS, LOCAL No. 71, *et al.*[*]

(*Nashville,* December Term, 1940.)

Opinion filed June 14, 1941.

[*]This case reprinted and annotated in 134 A. L. R. ——.

A. E. WEINSTEIN, of Memphis, for appellants.

BRYAN & MAXWELL, of Memphis, for appellees.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by certain directors of defendant organization to enjoin the expenditure of the organization's funds in efforts to enforce the provisions of chapter 124 of the Public Acts of 1939. A demurrer was filed to the bill and, on agreement of parties, the demurrer was heard with the application for an injunction. The demurrer was overruled, the injunction awarded, and defendants permitted to appeal.

It is agreed by counsel that the determinative question and the only question arising in the case is the question of the validity of the act above mentioned.

The act is entitled as one to prohibit bands and orchestras of public institutions, supported in whole or in part by State, county or municipal taxes, from competing with the employment of civilian musicians.

Section 1 of the Act is in these words:

"Be it enacted by the General Assembly of the State of Tennessee, That from and after the passage of this Act, it shall be unlawful for any band or orchestra of

any public school, college, university, department, division or institution, supported in whole or in part by moneys raised from State, County, or Municipal taxes, to play or to be compelled to play, or to be ordered, authorized or permitted to render any services as musicians of such bands or orchestras at any time or place other than as part of and in connection with any function in which such school, college, university, department, division or institution, officially participates, or as a part of a patriotic, or religious or cultural musical function, or official affairs of the State, Counties or Municipalities, where no admission price is charged, or in Counties where there are no professional bands, or any such musical function sponsored, promoted or directed by the State or any county or municipality, or any department, division or branch thereof, or which is sponsored, promoted or directed by any non-profit organization, for public benefit or interest, and not for profit. The intent and purpose of this Act, as an expression of the public policy of this State, is to avoid and prevent such bands or orchestras from in any and every possible way competing with or making unnecessary the employment of civilian musicians.''

Section 2 of the Act makes it unlawful for any person in control of such bands or orchestras to direct the employment of such bands and orchestras contrary to the provisions of the act, and section 3 provides that any violation of the act shall be punished as a misdemeanor and that each separate piece of music played contrary to the terms of the act shall constitute a separate offense.

It will be observed that the act is directed at bands and orchestras in all institutions of the State. Since it is only schools of the State, among its institutions, which

ordinarily have bands and orchestras, obviously the chief purpose of the enactment is to control these school bands.

It is urged that the act violates Section 8 of Article 1 and Section 8 of Article 11 of the Constitution in several particulars. We need not consider all the points that are made. We think the chancellor properly held the act unconstitutional.

■ It is within the power of the State to prohibit students in any of its schools from organizing or joining a band, or if school bands are countenanced, the State might restrict the appearances or performances of these bands to limited occasions. These things might be done as a matter of discipline to prevent the time and interest of the students being too greatly diverted from their school-work proper. These conclusions follow from the principles announced in *Leeper* v. *State,* 103 Tenn., 500, 53 S. W. 962, 48 L. R. A., 167; *Scopes* v. *State,* 154 Tenn., 105, 289 S. W., 363, 53 A. L. R., 821; *Waugh* v. *Board of Trustees,* 237 U. S., 589, 596, 35 S. Ct., 720, 59 L. Ed., 1131.

The act before us however disavows any purpose to promote discipline in the State's institutions or otherwise benefit such institutions. In section 1 of the Act, as above appears, it is said: ''The intent and purpose of this Act, as an expression of the public policy of this State, is to avoid and prevent such bands or orchestras from in any and every possible way competing with or making unnecessary the employment of civilian musicians.''.

■ The act, therefore, is not an effort to exercise the State's power in the interests of its institutions nor in the interests of the beneficiaries of those institutions. It has no such direction. It penalizes certain conduct of students in State institutions and those in control of the

institutions, which conduct has no relation to the welfare or efficiency of such institutions.

Perhaps as to teachers or those in control of the institutions the act might be upheld as a permissible exercise of authority over the State's employees. *Scopes v. State, supra.* But as to students the case is different. They are not employees.

The act does not seek to regulate the activities of students as such, but attempts to regulate the activities of citizens, who happen to be students, in their relations with other citizens.

It could hardly be contended that a law was valid which forbade a citizen to render his neighbor a service merely because there was an artisan in the same county whose avocation it was to perform such services for compensation. That, however, is the effect of this statute. It undertakes to prevent a group of amateur musicians from contributing their services at various functions, in counties where there is another group of musicians whose business it is to render such services at such functions for hire.

These students are entitled to the benefits of the State's institutions under general laws. We think their extracurricular activities cannot be penalized as here attempted for the declared purpose and the sole purpose of profit to another group of citizens.

As we have heretofore stated, other features of the act probably bring it in conflict with the constitutional provisions quoted, but what we have said is sufficient.

Affirmed.